ANNIE P. GUREVITCH, Individually and as Administratrix of the Estates of MAX GUREVITCH and Another, Deceased, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 31495.)

LEO BLUM et al., Appellants, v. STATE OF NEW YORK, Respondent. (Claim No. 31784.)

JOHN N. FOLMAR, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 31828.)

WILFORD CHAVERS, Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 31829.)

HIRAM SMITHART, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 31827.)

JOEL STEPHENS, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 31882.)

Fourth Department, October 27, 1954.

*Lewis C. Ryan* and *John F. Gates* for Annie P. Gurevitch, individually and as administratrix, appellant.

*Benjamin A. Quitt* for Leo Blum and another, appellants.

*Sigmund Schwartz* and *David Perman* for John N. Folmar and another, appellants.

*Nathaniel L. Goldstein, Attorney-General* (*John R. Davison* and *Wendell P. Brown* of counsel), for respondent.

VAUGHAN, J. These appeals, seven in number, are from separate judgments of the Court of Claims dismissing on the merits, after a joint trial, the claims of all the claimants-appellants as well as the claims of two other persons involved, from which dismissals appeals have not been taken.

The claims arise out of a collision between two automobiles which occurred at the intersection of Model City Road and Route 104 (also known as Ridge Road and otherwise referred to in the locality as the Million Dollar Highway) in the town of Lewiston, Niagara County. Route 104 is a main highway of the New York State highway system running easterly and westerly across the State. Model City Road is a county highway which runs generally northerly and southerly and intersects Route 104 at right angles.

The day of the accident, July 14, 1952, was clear and sunny and the road surfaces were dry. Around six forty-five o'clock in the afternoon of that day Max Gurevitch was operating his Studebaker automobile in an easterly direction along Route 104. Riding with him were his wife Annie P. Gurevitch, their daughter Deanna Gurevitch and Leo Blum, his wife, Judy Blum and their daughter, Debbie Blum. As the Gurevitch car approached and entered the intersection, the Pontiac car driven.

by Hiram Smithart traveling south on Model City Road proceeded into the intersection without stopping, crossed the northerly strip of Route 104 and crashed into the left side of the Gurevitch car.

Located in the northwest quadrant of the intersection was a cornfield which it is claimed limited somewhat the vision of both operators as they approached the intersection.

As a result of the impact Max Gurevitch and his daughter were killed and Annie Gurevitch, his wife, and Leo Blum and his wife, Judy Blum, sustained serious personal injuries.

The court held that the State failed to establish any negligence on the part of Max Gurevitch which contributed to the accident and exonerated all the occupants in his car of negligence.

The operator and occupants of the Smithart car were also injured in varying degrees. At the close of all the evidence the court dismissed the claim of Smithart upon the ground that he failed to establish his own freedom from contributory negligence but found the occupants of his car free from negligence.

The court found that on September 9, 1943, a standard stop sign was erected on " the west side of Model City Road about 40 feet north of its intersection with Route 104  *  *  *. The sign was placed pursuant to a general order of the State Traffic Commission. On Monday, July 14, 1952 the sign was not erect so that it could be seen and read by southbound travelers on the road but was lying face down." While there is some dispute as to how long the sign had been in that position, the court found that it had been down sufficiently long so that the State had constructive notice of its condition.

The sole ground upon which claimants sought to impose liability upon the State was its failure to replace the stop sign.

The trial court found that the intersection in question was a dangerous one and " That the State of New York through the State Traffic Commission had the power and it was its duty to erect and maintain traffic control signs at the said intersection ". However, the court exonerated the State from all liability and dismissed all the claims on the ground that Smithart's reckless and negligent driving was the proximate cause of the collision. Implicit in such a finding is one that the failure of the State to replace the stop sign was not a concurring or contributing cause of the accident. The evidence does not support a finding of lack of causal connection between the failure to replace the sign and the accident.

The court in its opinion recognized what we believe to be settled law, that if the failure to replace the stop sign " was a contributing cause of the collision, the State must respond in damages ".

It is argued that Smithart was aware that he was approaching an intersection and that the presence of a stop sign would have added nothing to his knowledge. This court in *Applebee* v. *State of New York* (284 App. Div. 532) rejected such an argument and held that the absence of a stop sign under circumstances such as in the instant case could not be ruled out of the case as being causally unconnected with the happening of the accident.

We may not assume or speculate that adequate warning signs would not have been heeded (*Nuss* v. *State of New York*, 195 Misc. 38, revd. 276 App. Div. 300, revd. 301 N. Y. 768) but may assume that had the stop sign been in position Smithart would have observed it and stopped. It is a fair conclusion we believe that " adequate and proper warning would have resulted in a slower speed and in a quicker realization of the dangers ahead ". (*Canepa* v. *State of New York*, 203 Misc. 694, 698, revd. 282 App. Div. 145, revd. 306 N. Y. 272.)

We reach the conclusion that Smithart's negligence was not the sole proximate cause of the accident. The absence of the stop sign in our opinion contributed substantially to the happening of the accident and was one of the proximate causes of the collision.

While the court has the power to pass upon all questions of fact arising in cases in the Court of Claims, including the question of damages, which the court did not find it necessary to reach, we feel that under the circumstances here presented, the case should be remitted to the Court of Claims to the end that the judge who has the opportunity of hearing and observing the witness may determine the amount of damages sustained by the respective claimants.

It follows that the judgments of dismissal should be reversed on the law and facts and a new trial granted.

PIPER, J. (dissenting). I dissent on the same grounds set forth in my dissenting opinion in *Applebee* v. *State of New York* (284 App. Div. 532, 536, 537), and also on the further ground that it was the duty of Smithart to stop at the intersection and grant the right of way to the Gurevitch car which was approaching from his right. The intersection sign gave him ample warning that he was approaching an intersection; he should have

slowed down and stopped if necessary. As the statute (Vehicle and Traffic Law, § 82, subd. 4) demanded that Smithart stop before entering the intersection to permit the Gurevitch car to pass, and he failed to obey that mandate, I think we are not required to speculate that he would have obeyed the requirement that he stop, had the stop sign been in place.

The finding of the trial court that the gross negligence of Smithart was the sole cause of the accident has ample support in the evidence. It was a question of fact for the court to decide and his finding should not be disturbed. I vote for affirmance.

All concur except PIPER, J., who dissents and votes for affirmance, in opinion. Present — McCURN, P. J., VAUGHAN, PIPER, WHEELER and VAN DUSER, JJ.

Judgments reversed on the law and facts and a new trial granted, without costs of this appeal to any party.